UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:22-cr-00181-JEB |
| v. : | |
| : | |
| DOUGLAS FARQUHAR MACRAE, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Douglas Macrae to four months home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

I.   **Introduction**

Defendant Douglas Macrae, 60 years old and self-employed as a landscaper, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in losses.

Macrae pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of four months home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution is appropriate in this case because Macrae entered the Capitol building while filming and taking pictures of the chaos surrounding him; boasted that he had entered the Capitol building on Facebook by posting a photo captioned, "I made it deep into the Capitol Building," and exclaiming "Yes!" when a Facebook user asked if he was in the

1

Capitol building after Macrae had posted that someone had been shot by Capitol police; and initially told law enforcement officials that he believed he lawfully entered the Capitol building, despite having worked in a building in the U.S. Capitol complex, and thus knowing that neither he nor the massive mob of rioters could freely enter a secured government building under the circumstances or in the manner that took place on January 6.

The Court must also consider that Macrae's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. *See United States v. Thomas Fee*, 1:21-cr-00131 (JDB), Tr. 04/01/2022 at 17 ("The defendant was an active participant in a mob assault on our core democratic values and our cherished institution. And that assault was intended by many and by the mob at large in general to interfere with an important democratic processes of this country. I cannot ignore that, cannot pull this misdemeanor out of that context.") (statement of Judge Bates). The defendant's actions and those of his fellow rioters enabled the breach of the Capitol, threatened the lives of the police officers, legislators, and their staffs, and disrupted the certification vote for several hours. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-4. As this Court knows, a riot cannot occur without rioters, and each and every rioter's actions—from the most mundane to the

most violent— contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Macrae's conduct and behavior on January 6.

*Douglas Macrae's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Douglas Macrae and friend Kenneth Wagonner traveled to Washington, D.C. from their homes in Virginia and West Virginia, respectively, to see former President Trump speak at the "Stop the Steal" rally. After the speech concluded, Macrae and Wagonner joined a large crowd and walked to the U.S. Capitol. When he arrived at the U.S. Capitol Building, Macrae took a "selfie" with the Capitol building and a large group of rioters behind him.



Macrae then proceeded to enter the U.S. Capitol Building through the East Front House Door at approximately 2:42 p.m. As he entered the building while an alarm loudly reverberated, Macrae appeared to be taking photos or recording a video of his entrance into the building.



Macrae walked into a hallway while documenting his entry into the building. As soon as he stopped filming, he turned around and brisky walked back toward the door where he entered. It appeared that he immediately decided to leave. However, as other rioters continued to enter the building, Macrae turned back around and decided to continue to join the mob inside the building. Macrae walked back through the hallway and turned into a longer hallway with a massive group of rioters in the Southeast corner of the building. About two minutes later, Macrae reportedly witnessed rioters beginning to act unruly and heard one rioter say, "this is getting crazy, I'm worried someone might get shot." Around this same time, tear gas began filling the air. Other rioters near Macrae can be heard saying things like, "we are getting gassed!" and "it looks like real heavy gas is coming out of there so I'm going to move . . . it's burning my eyes and my throat," and coughing.

At this time, Macrae started to make his way back to the hallway he had originally walked through. But before leaving, Macrae stopped at a crowded doorway, took a photo or video of the long hallway full of rioters, and, after documenting the chaos, briskly made his way out of the

same entrance that he entered. The alarm was still sounding and flashing. All told, Macrae was in the building for approximately 3 minutes.

While inside the Capitol building, Macrae took a photo of a large painting. He posted the photo on Facebook for all to see, with the caption: "I made it deep into the Capitol building."



Macrae posted another Facebook picture of the interior of the U.S. Capitol Building with the caption, "Someone has just been shot by Capitol police." In the comment section below the photo, another Facebook user asked Macrae: "Are you there?" and Macrae responded, exclaiming, "Yes!"



After he exited the building, Macrae remained on Capitol grounds and filmed other rioters. When he voluntarily interviewed with FBI, Macrae reported that, after he left the Capitol building and while he videoed other rioters, he captured one rioter who discussed having a gun on his person and that rioter insinuated that he should have used it inside the Capitol building.

After January 6, Macrae sent several private messages on Facebook regarding his experience on January 6. For example, he sent pictures of rioters at the Capitol building and a private message stating, "Hard to say Some of the trumpers were acting crazy but Antifa was thought to have infiltrated the protest."

On January 25, 2021, and on April 27, 2022, when Macrae voluntarily interviewed with the FBI, he admitted that he observed police officers in front of and blocking certain doors, and he heard loud noises, which he believed to be flash bangs, coming from the other side of the Capitol. After entering the building, Macrae saw people climbing a staircase to another level. Macrae stated that he condemned the violence committed on January 6 and regretted being inside the Capitol Building. He said, however, that he believed that he was permitted to enter the building.

During his voluntary interviews, Macrae also discussed his background. He stated that in 1979 or 1980, for one year, and again from 1985-1991, he worked at a printing company that contracted out to the U.S. Capitol and thus he had an office in the Rayburn building, and often interacted with the employees of the House of Representatives. He also worked for the Washington Post from 1991 to 1999 and started lawncare services in 1999.

*The Charges and Plea Agreement*

On May 12, 2022, the United States charged Douglas Macrae by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On July 19, 2022, pursuant to a plea agreement, Macrae pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

At the plea agreement hearing, Macrae admitted that he knew he did not have permission to enter the Capitol building and that he paraded, demonstrated, or picketed within the U.S. Capitol building.

### III.  Statutory Penalties

Macrae now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Macrae faces up to six months of

7

imprisonment and a fine of up to $5,000. Macrae must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of four months home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 was a crime unparalleled in American history and defies comparison to other violent riots. It represented a grave threat to our democratic norms and practices. Indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants.

While each defendant must be sentenced based on their own conduct, this Court should take into account that each person who entered the Capitol on January 6 without authorization did so under extreme circumstances. As they entered the Capitol, they very likely crossed through numerous barriers and barricades and heard the violent outcries of a mob. Depending on the timing

and location of their approach, they also may have observed extensive fighting between the rioters and police and smelled chemical irritants in the air.  No rioter was a mere tourist that day.

Additionally, while assessing Macrae's individual conduct and fashioning a just sentence, this Court should look to a number of critical aggravating and mitigating factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) defendant's reaction to acts of violence or destruction; (5) whether, during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from police officers; and (9) whether the defendant demonstrated sincere remorse or contrition.  While these factors are not exhaustive, they help to place each defendant on a spectrum as to their fair and just punishment.  Had Macrae personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of Macrae is therefore not a mitigating factor in misdemeanor cases.

In this case, Macrae briefly entered the Capitol, with a larger crowd, through a door that was rife with commotion, including a beeping alarm.  Certainly this conduct alone was wrong given the overall context that day.  After Macrae initially walked into the building, he appeared to have quickly turned around and made his way back to the exit, but instead of leaving, he turned around and walked back deeper into the building.  In doing so, Macrae twice walked past a security screening checkpoint.  He later, incredibly, stated to the FBI that he believed he had permission to be inside the building. Macrae's voluntary decision to join the mob and storm a government building is nothing short of shocking in light of his former employment at the Rayburn building,

9

part of the U.S. Capitol complex. Indeed, Macrae's Facebook post where he emphatically exclaimed that he was inside the Capitol building after reporting that someone had been shot shows that Macrae was fully aware of the nefarious and dangerous situation that he voluntary entered upon. In addition, from the moment Macrae walked into the Capitol building, and nearly the entire time he was inside, Macrae was sufficiently excited to use his cell phone to document the chaos and share it online.

Even so, Macrae was in the building for only 3 minutes. He did not make it far into the building and much of Macrae's time in the Capitol is captured on CCTV, and there is no evidence that he engaged in any violence or destruction of property during his brief entry into the Capitol. Macrae voluntarily interviewed with the FBI and told them about his actions on January 6, and in doing so he expressed remorse for his participation.

Given Macrae's brief and limited time into the building, lack of participation in any assaultive or destructive conduct, cooperation with law enforcement, and expression of remorse for what happened on January 6, this weighs in favor of a home confinement and probationary sentence.

      **B.**    **The History and Characteristics of Macrae**

As set forth in the Presentence Investigation Report, Douglas Macrae's criminal history includes Petit Larceny (1982), Possession of Marijuana (1982), Possession of Hashish (1983), Sodomy (1993), felony Bail Reform Act violation (1982), Possession of Marijuana (1990), No Permit And Unsafe Tires Violations (1990), Attempted Possession With Intent To Distribute Marijuana (1993), and several traffic infractions. ECF No. 23 ¶¶ 21-30.

Based on a review of Macrae's cell phone contents and other investigative steps, the government is not currently aware of Macrae having an association with extremist groups,

promoting violence, or engaging in any other criminal conduct. Macrae has been fully compliant with his pre-trial conditions of release and was cooperative with law enforcement at the time of and since his arrest.

Notably, Macrae expressed an early interest in pleading guilty in the case. When recommending an appropriate sentence, the government gives weight to Macrae's relatively expeditious resolution of this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[1] As with the nature and circumstances of the offense, this factor supports a sentence of home detention, as it will at a very minimum in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected.") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

---

[1] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf.

11

defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37). General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [[Defendant Last Name]] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential

12

rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

The court should also consider specific deterrence. On one hand, Macrae's actions highlight the need for deterrence. Macrae knew that his entry was unlawful, and it was evident to him and anyone else at the Capitol that the situation outside and inside the building had devolved into a riot. Macrae had previously worked in a building within the U.S. Capitol complex, and on January 6, he saw law enforcement guarding doors and heard flash bangs. Thus, his statement that he believed he was permitted to enter the building is highly incredible. Macrae was braggadocious about his entry into the Capitol when he posted on Facebook that he "made it deep into the Capitol building." Macrae absorbed the chaos of January 6 primarily from the lens of his cell phone camera, and posted pictures for all to see. Indeed, Macrae emphatically answered "Yes!" when asked by a Facebook user whether Macrae was inside the building, after Macrae had posted that "someone has just been shot by Capitol police." This course of conduct should not be overlooked and shows a troubling understanding, at least at the time, regarding the extreme seriousness of the situation. And, although Macrae stated that he left the building because rioters started to act unruly, video evidence shows that many rioters, Macrae including, made an effort to leave only after chemical irritants began filling the air.

However, as discussed above, Macrae's actions at the Capitol that day were much more limited than most individuals, and he has expressed remorse for what happened on January 6. He has stated that he condemned the violence and regretted being inside the Capitol building that day. Macrae further stated that he felt that he had been grouped in with violent offenders from that day, and that he did not support such violence. Macrae has shown that he takes this incident seriously through his ready cooperation with the FBI. Although the need to deter what happened in general

on January 6 favors incarceration, the facts of Macrae's specific case and his subsequent actions favor home detention.

### E.     The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Macrae based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot. Although those like Macrae convicted of misdemeanors are generally less culpable than defendants convicted of felonies, misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not be the default.[3] *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth at sentencing); *accord United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (statement of Judge Friedman).

---

[2] Attached to this sentencing memorandum is a table providing information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[3] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097 (PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165 (TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Macrae has pleaded guilty to Count Four of the Information, charging him with violating 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. Avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009); *see id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g.*, *United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*,

483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against police officers, and large number of victims. Thus, even though many of defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

First, in *United States v. Jones*, 21-cr-321 (JEB), the defendant filmed rioters removing barricades and scaling a wall on Capitol grounds to access an entry point to the building. After making it to the building and entering amidst chaos and disruption, Jones spent approximately 15 minutes inside the Capitol building. He continued to document the chaos as he made his way through several hallways. Although Jones was in the building longer than Macrae and certainly had a more dramatic entrance, their conduct once inside was similar. Both defendants spent the majority of the time inside the Capitol building filming or photographing the events around them, neither defendant committed any acts of violence or destruction of property, and both defendants expressed remorse. Although Jones did not post on social media about his participation in the riot like Macrae, Jones was also proud of his participation at the time and communicated with a family member about it. Jones left the building as a result of getting teargassed. Although Macrae did not admit that he left because of exposure to chemical irritants, he did leave the building with a crowd of people who rushed out only after being exposed to chemical irritants. In *Jones*, this Court

16

sentenced Jones to 2 months' home confinement, 24 months' probation, and 100 hours of community service.

Next, in *United States v. Joshua Bustle*, 21-cr-238 (TFH), the defendant entered the Capitol building while filming his co-defendant. Bustle made his way into and wandered through the building until he entered the Rotunda where police officers were forcing the rioters, including Bustle, out. Bustle exited through the same doors he entered and was inside the Capitol for about 20 minutes in total. Although Bustle was inside the building longer than Macrae, their conduct while inside the building was similar. Bustle and Macrae were both in the building while loud sirens sounded and that did not deter them. Like with Macrae, the government had no evidence that Bustle engaged in violence or destruction of property and he accepted responsibility of his actions. Bustle did not have the same aggravating factor of posting about his conduct on social media like Macrae did, but he did spend longer in the building. Judge Hogan imposed 30 days' home detention, 24 months' probation, and $500 restitution.

Finally, in *United States v. Rosa*, 21-cr-68 (TNM), the defendant made several posts on social media before the Capitol breach. There, he stated he supported a "fight" to stop the certification of the presidential election. Like Macrae, Rosa heard bangs, and acknowledged the smell of pepper spray, as he approached the building, but nevertheless went inside the Capitol. Rosa's conduct while inside was similar to that of Macrae's—he remained non-violent and non-destructive, and generally wandered around taking photos or videos. Rosa stayed in the building for approximately 20 minutes, which is longer than Macrae, but unlike Macrae, Rosa turned himself in to the FBI. Both defendants expressed remorse and provided a voluntary interview. Judge McFadden sentenced Rosa to 12 months' probation and 100 hours of community service.

These cases provide suitable comparisons to the relevant sentencing considerations in this case but, in any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Macrae to four months home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

>                   Respectfully submitted,
>
>                   MATTHEW M. GRAVES
>                   United States Attorney
>                   D.C. Bar No. 481052
>
>         By:       *s/ Ashley Akers*
>                   Trial Attorney

18

        MO Bar No. 69601
        Detailed to the U.S. Attorney's Office
        601 D Street NW
        Washington, DC 20001
        (202) 353-0521
        Ashley.Akers@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 11th day of October day a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

    /s/ *Ashley Akers*
Trial Attorney